IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RASHAUD C. HARRELL                                              PETITIONER

VS.                                          CIVIL ACTION NO. 3:18cv482-DPJ-FKB

WARDEN CHRISTOPHER
RIVERS                                                          RESPONDENT

## REPORT AND RECOMMENDATION

Rashaud C. Harrell is a federal inmate housed at the Federal Correctional

Complex in Yazoo City, Mississippi.  He is serving a 180-month sentence for drug

trafficking.  Harrell filed this petition pursuant to 28 U.S.C. § 2241 challenging a

determination of guilt in a prison disciplinary proceeding and his resulting loss of good

conduct time. The undersigned recommends that relief be denied.

The relevant events occurred while Harrell was incarcerated at the Federal

Correctional Institution in Terre Haute, Indiana.  On April 12, 2017, Officer J. Sprinkle

issued an incident report charging Harrell with a violation of Code 108 of the Inmate

Disciplinary Code, possession of a hazardous tool.  [15-3] at 2.[1]  In the report, Officer

---

[1]The prison disciplinary process begins with the issuance of an incident report prepared by a prison staff person. The report is normally served on the inmate within 24 hours. The next step is the appointment of an investigating officer (a supervisory-level staff member) and an investigation by him. The investigation includes a meeting between the investigator and the inmate at which the inmate is given the opportunity to make a statement. The inmate has the right to remain silent; however, an adverse inference may be drawn against him for doing so. When the investigator has completed his investigation, he records his results on the incident report and forwards it, along with any other relevant materials, to the Unit Disciplinary Committee (UDC).  If the alleged offense is a low or moderate severity offense, the UDC may make a determination as to guilt. Where the UDC determines that the inmate did not commit the offense, the UDC expunges the report from the inmate's file.  Alternatively, it may refer the matter to the Disciplinary Hearing Officer (DHO).  Referral to the DHO is automatic for high severity offenses. Where the matter is referred to the DHO, the UDC advises the inmate of his right to choose a staff representative for the hearing and to request witnesses.  Following a hearing, the DHO issues a written decision.  The decision may be appealed through the Administrative Remedy Program. *See generally* BOP Program Statement 5270.09 §§ 541.5-541.8, available at https://www.bop.gov/policy/progstat/5270_009.pdf.

Sprinkle stated that while walking out of a building in the camp, he had observed Harrell place something in his pocket. *Id.* Officer Sprinkle approached him and directed him to empty his pockets. *Id.* Harrell withdrew a cell phone from his pocket. Harrell pushed a button to lock the phone before Officer Sprinkle was able to confiscate it. *Id.*

The incident report was referred for investigation by Officer L. Mosley, who delivered the report to Harrell the next day, April 13, 2017. *Id.* After a suspension pending referral to the FBI for criminal investigation, the incident report was released for continuation of the administrative process on April 28, 2017. [15] at 2, [15-1] at 3, [15-3] at 4. Officer Mosley performed an investigation on April 28, 2017, during which Harrell declined to make a statement. [15-3] at 3.

A Unit Disciplinary Committee (UDC) hearing was held on May 2, 2017. *Id.* at 2. Again, Harrell refused to give any *response* to the charges. *Id.* Because of the severity of the charge and pursuant to BOP policy, the UDC referred the matter to the Disciplinary Hearing Officer (DHO). *Id.* Notice of the DHO hearing was provided Harrell that same day. [15-5] at 2.

The hearing before the DHO, J. Bradley, was held on June 30, 2017. [15-1] at 2. A. Setzer appeared as his staff representative. *Id.* Harrell had identified inmate Tim Bailey as a witness, and a statement obtained from Bailey was presented at the hearing. *Id.* In his statement, Bailey, who had been in the yard at the time of the incident, stated that other inmates had been in the area near Harrell but that they left when Officer Sprinkle approached. [15-4] at 2. Officer Sprinkle performed a pat-down search of Harrell and found nothing. *Id.* Officer Sprinkle then picked up a phone that

2

was lying on the ground in the area where the other inmates had been. *Id.* Harrell made a statement at the hearing in which he denied ownership of the phone and maintained that Officer Sprinkle had found the cell phone lying in the grass. [15-1] at 2.

The DHO issued a written report on July 25, 2017. [15-1] at 2-5. He found, based upon the evidence, that Harrell had violated Code 108. *Id.* at 4. The DHO stated that in reaching his decision, he had considered Harrell's statement denying ownership of the phone to be not credible, noting that Harrell had failed to present this defense at earlier opportunities in the disciplinary process. *Id.* The DHO found inmate Bailey's statement not credible because the DHO had observed a trend of similar statements given in disciplinary proceedings at the facility. *Id.* The DHO found Officer Sprinkle's statements and observations regarding the incident to be credible. *Id.* He imposed a sanction that included a 41-day disallowance of good-conduct time and a 180-day forfeit of non-vested good-conduct time. *Id.*

Harrell argues that the disciplinary proceeding did not comport with due process in that (1) the DHO hearing was not fair and impartial; (2) the incident report was not numbered; (3) he did not receive 24-hour notice of the DHO hearing; (4) the DHO did not issue the report within ten days of the hearing; and (5) the forfeiture of his non-vested good conduct time was unlawful.

The procedural requirements for a prison disciplinary proceeding resulting in the loss of good conduct time were outlined by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Those requirements are (1) written notice to the inmate of the charges at least 24 hours prior to the disciplinary hearing; (2) an opportunity "to call

3

witnesses and present evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; (3) the aid of a fellow inmate or staff member if the inmate is illiterate or the issue is complex; (4) an impartial decision-maker; and (5) a written statement by the fact finder as to the evidence relied upon and the reasons for the decision. *Wolff*, 418 U.S. at 563-70.

Harrell describes numerous circumstances that he claims violated his right to due process. First, he complains that at the hearing, the Acting Camp Administrator, Ms. Len Fortune, made abusive and prejudicial comments about him and that she conspired with the DHO to retaliate against Harrell for having filed grievances. Harrell does not give any further specifics as to Ms. Fortune's alleged behavior. In any event, the mere fact that someone other than the DHO is abusive or insulting in a hearing does not raise any due process issue. Harrell's vague allegation that the DHO ruled against Harrell based not upon the evidence, but, rather, in retaliation for the filing of unspecified grievances, is insufficient to establish that the DHO was not fair and impartial.

Harrell also contends that the disciplinary process failed to comply with certain procedural rules and requirements. For example, he complains that no number was entered on the original incident report, that he had less than 24 hours' notice of the scheduling of the DHO hearing, that he was refused a copy of the referral for FBI prosecution, and that the DHO failed to issue his written report within ten days of the hearing. A prison's failure to follow its own rules or administrative procedures, without more, does not violate due process. *See Stanley v. Foster*, 464 F.3d 565, 569 (5th Cir.2006) (citation omitted). In a disciplinary proceeding, the only issue regarding

4

procedure is whether a prisoner has been denied the protections set forth in Wolff.[2]

Although *Wolff* does contain a 24-hour notice requirement, that requirement is

concerned with the time period between notification of the charges and the hearing and

is for the purpose of enabling the prisoner "to marshal the facts and prepare a defense."

*Wolff*, 418 U.S. at 564.  More than two and a half months elapsed between the date

Harrell received notice of the charges, April 13, 2017, and his hearing before the DHO

on June 30, 2017.  There was no violation of *Wolff*'s notice requirement.

Finally, Harrell complains about his punishment, particularly the loss of non-

vested good conduct time, contending essentially that there is no such thing as non-

vested good conduct time.  Harrell is incorrect.  Federal prisoners are eligible for an

award of up to 54 days credit each year.  See 18 U.S.C. § 3624(b)(1); 28 C.F.R. §

523.20.  The credit is awarded at the end of the year. 18 U.S.C. § 3624(b)(1).  However,

for inmates serving a sentence for an offense committed on or after April 26, 1996

(PLRA inmates), the award, though credited at the end of each year, does not vest until

the date the prisoner is released from custody. 18 U.S.C. § 3624(b)(2).  Thus, non-

vested good conduct time is time which the inmate has earned for past years and which

---

[2] Furthermore, Harrell has not established that any regulations were violated.  He has pointed to no "requirement" that an incident report be numbered, although giving each incident report a number is obviously the normal procedure.  He relies upon BOP PS 5270.09 § 541.8 in support of his argument about notice of the hearing.  Like the similar requirement of *Wolff*, this provision requires 24-hours of notice of the charges prior to the hearing; it requires no particular time period for notice of when the hearing will occur.  Harrell cites PS 5270.09 § 541.5 in support of his argument that he was entitled to the referral documents.  Section 541.6 provides that "if the case is ultimately forwarded to the DHO, the DHO must give a copy of the investigation and other relevant materials to the inmate's staff representative, if requested, for use on the inmate's behalf."  Harrell has failed to establish how or why the referral documents were relevant to his defense.

has been credited to him.  It is distinguished from good conduct time available for the current year, which has not yet been credited.

The loss of both of these categories of good conduct time was in accordance with the applicable regulations.  Available sanctions under the disciplinary regulations include both the disallowance of credit that might otherwise be available for award at the end of the current year and the forfeiture of non-vested credit that has been awarded for previous years.  The offense of which Williams was found guilty, possession of a hazardous tool, constitutes a "greatest severity level" offense.  28 C.F.R. § 541.3 (Table 1); BOP PS 5270.09 (Table 1).  Available sanctions for a greatest severity level offense include the following:

> B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
>
> B.1 Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

*Id.*

Harrell had 306 days of earned non-vested good conduct time.  [15-2] at 3. Thus, his loss of 180 days of such time fell within the available sanctions.  The disallowance of 75 percent of his 54 days available for the current year (41 days) was likewise in accordance with the available sanctions.

Finally, to the extent that Harrell is challenging the sufficiency of the evidence against him, that challenge fails to provide a basis for relief.  A court's review of a DHO's decision is limited by the deferential standard of *Superintendent, Massachusetts*

*Correctional Institution v. Hill*, 472 U.S. 445 (1985), which requires merely that there be "some evidence" to show that the inmate committed the offense. *Id.* at 455. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . ." *Id.* at 455-56. If there is "some evidence" to support the decision, it must be upheld even if the evidence is "meager." *Id.* at 456. Thus, this court's analysis requires only an examination of the evidence supporting the DHO's decision. That evidence consisted of Officer Sprinkle's statement that he personally observed Harrell place the cell phone in his pocket. This statement clearly meets the "some evidence" standard.

The undersigned concludes that Harrell's disciplinary proceeding comported with the requirements of due process and that the decision of the DHO was supported by some evidence. Accordingly, the undersigned recommends that habeas relief be denied.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

7

Respectfully submitted, this the 4th day of May, 2020.

s/ F. Keith Ball_____
United States Magistrate Judge